## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN MAGEE, LANCE MAGEE, | Case No.: 4:19-cv-00353-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| J.R. SIMPLOT COMPANY,  a Nevada Corporation Authorized to do Business in the State of Idaho, | **(Dkt. 16)** |
| Defendant, | |

Pending before the Court is Defendant J.R. Simplot Company's ("Simplot") Motion for Summary Judgment (Dkt. 16).  Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  <u>GENERAL BACKGROUND</u>

This is a personal injury action brought by Plaintiffs Susan and Lance Magee (collectively "Plaintiffs") against Simplot, arising out of a December 24, 2018 vehicle collision that occurred on Smoky Canyon Road (the "Road") in Caribou County, Idaho.  Mr. Magee was driving a 2016 GMC Sierra Truck with Mrs. Magee in the front-passenger seat on a trip to go snowmobiling in the Diamond Creek drainage, driving uphill on the Road and pulling a snowmobile trailer.  Headed downhill on the Road from the Smoky Canyon Mine, a Simplot employee in the course of his work duties was driving a 1997 Kenworth Diesel Truck with an attached snowplow.  At a curve in the Road, the two vehicles collided.

Plaintiffs were injured in the accident and they seek to recover damages for such injuries based upon four claims against Simplot:  (1) negligence (First Cause of Action), (2) negligent hiring and retention (Second Cause of Action), (3) respondeat superior liability (Third Cause of

**MEMORANDUM DECISION AND ORDER - 1**

Action), and (4) violating the "extreme caution" standard in the operation of a commercial motor vehicle (Fourth Cause of Action). Simplot now moves for summary judgment, arguing that all the claims are precluded by Idaho's Recreational Use Statute. Simplot argues alternatively that Plaintiffs Fourth Cause of Action, based upon 49 C.F.R. § 392.14, must be dismissed because its employee was not operating a "commercial motor vehicle" as defined by 49 C.F.R. § 390.5.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id*. at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To

**MEMORANDUM DECISION AND ORDER - 2**

carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her . . . affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). However, the court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Instead, the "party opposing summary judgment must direct [the court's] attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

## III.  DISCUSSION

### A.  Idaho's Recreational Use Statute Does Not Preclude Plaintiffs' Negligence-Based Claims Against Simplot

Simplot argues that it is immune from liability under Idaho's Recreational Use Statute, which provides immunity from suit in defined circumstances to those who make their land available to the public for recreational use without charge. The relevant provisions of the statute are these:

> (c)    Owner Exempt from Warning. An owner of land owes no duty of care to keep the premises safe for entry by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes. Neither the installation of a sign or other form of warning of a dangerous condition, use, structure, or activity, nor any modification made for the purpose of improving the safety of others, nor the failure to maintain or keep in place any sign, other form of warning, or modification made to improve safety,

**MEMORANDUM DECISION AND ORDER - 3**

shall create liability on the part of an owner of land where there is no other basis for such liability.

(d)     Owner Assumes No Liability.  An owner of land or equipment who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1)     Extend any assurances that the premises are safe for any purpose.

(2)     Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3)     Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

I.C. § 36-1604(c), (d).

The statute encourages "owners of land to make land, airstrips and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes."  I.C. § 36-1604(a).  Immunity is conferred "if three conditions are met:  (1)  the person or entity asserting immunity must be an 'owner' within the meaning of the statute; (2) the owner must have permitted the person to enter the property 'without charge'; and (3) the use of the property must be for recreational purposes."  *Albertson v. Fremont Cnty.*, 834 F. Supp. 2d 1117, 1128 (D. Idaho 2011) (citing I.C. § 36-1604(d)).  Relying upon these component parts of the statute, Simplot claims immunity against the negligence claims asserted in Plaintiffs' Complaint "because it is a landowner who permits the public to use the Road without charge for recreational purposes."  Simplot's Mem. ISO MSJ, p. 7 (Dkt. 16-2).

Simplot also draws upon a recent amendment to the Idaho Recreational Use Statute, which states:

(g)     Provisions Apply to Funding, Maintenance or Improvements.   The provisions of this section shall be deemed applicable to the duties and liability of any governmental entity, nongovernmental organization or person that provides funds, reasonably performs maintenance, reasonably makes or supports improvements, holds conservation easements or takes

**MEMORANDUM DECISION AND ORDER - 4**

> similar reasonable action regarding land made available to the public
> without charge for recreational purposes.

I.C. § 36-1604(g).  According to Simplot, this section of the statute *also* applies to Simplot "because Simplot is a nongovernmental organization that provides funding and reasonably provides maintenance and improvements regarding the Road, which is made available to the public without charge for recreational purposes."  Simplot's Mem. ISO MSJ, p. 9 (Dkt. 16-2) (citing I.C. § 36-1604(g)); *see also id*. at p. 6 ("Therefore, the Recreational Use Statute applies to persons and entities that are considered 'owners' *as well as* those who fund, maintain, improve, or take other action regarding the land that is made available to the public without charge for recreational purposes.") (emphasis added); *id*. at p. 8 ("For the Recreational Use Statute to apply, Simplot must first establish that it is an "owner"; and/or that it provides funding, reasonably performs maintenance, improvements, or other action regarding the Road.").

In sum, Simplot submits that Plaintiffs' negligence-based claims must be dismissed pursuant to Idaho's Recreational Use Statute because (1) Simplot owned the Road and/or provided funding and reasonable maintenance and improvements to the Road at its own expense; (2) Simplot did not charge the public a fee to use the Road; and (3) Plaintiffs were using the Road for recreational purposes.  *See id*. at p. 11.  The record is clear that Plaintiffs were not charged to use the Road; therefore, the remaining questions are whether Simplot is an "owner" of the Road (or funded, maintained, and improved the Road at its own expense) within the meaning of the statute, and whether Plaintiffs used the Road for recreational purposes.  For the reasons that follow, the answer to each question is "no."

      1.    <u>Simplot is Not an "Owner" of the Road</u>

The Idaho Recreational Use Statute defines "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises."  I.C. § 36-1604(b)(4).  Simplot

**MEMORANDUM DECISION AND ORDER - 5**

argues that it meets such a definition because it keeps the Road clear during the wintertime,

stating:

- "Simplot has been operating the [Smoky Canyon] Mine since 1982 and keeps the Road open to the public throughout the winter, which would otherwise be inaccessible to vehicular traffic without the snow removal operations provided by Simplot."

- "Simplot does not charge the public to use the Road and is not required to keep the Road open during the winter."

- "Simplot should be considered an 'owner' because it is an occupant and/or controls the Road where Plaintiffs were injured."

- "Simplot is an occupant and has control over the Road because Simplot has the power and authority to keep the Road open during the winter under the Road Use Agreement."

- "Simplot also has control over the Road through its management of the snow removal operations and other maintenance on the Road."

- "If Simplot did not remove snow from the Road during the winter, the public would not have access to the Road during the winter due to the large amounts of snow that accumulates on the Road.  As a result, Simplot should be interpreted to be an occupant and/or have control over the Road because it has the power and authority to keep the Road open to the public without charge for recreational purposes."

Simplot's Mem. ISO MSJ, pp. 7-8 (Dkt. 16-2) (citing Black's Law Dictionary (11th ed. 2019)

(defining "occupant" as "someone who has possessory rights in, or control over, certain property

or premises"); *Albertson*, 834 F. Supp. 2d at 1129-30 ("[T]o be an 'owner' within the meaning of

the Idaho [Recreational Use Statute], the person or entity must have the authority to exclude the

public from the premises.")).

The analysis under Idaho's Recreational Use Statute is more layered, however.  Although

Simplot plows the Road in the winter, this does not make Simplot an *owner* of the Road.  The

federal government owns the Road; the land it traverses is part of a National Forest. By

traversing the National Forest, through permission of the United States Forest Service, Simplot

**MEMORANDUM DECISION AND ORDER - 6**

(as a "permittee") uses the Road to access and operate the Smoky Canyon Mine. *See* Road Use

Permit at p. 1, attached as Ex. A to Pls.' SODF (Dkt. 18-1) ("J.R. Simplot Company . . . (. . . the

Permittee) . . . is hereby granted use of the following road(s) or road segments:  The Smoky

Canyon Road . . . . for the purpose of transporting employees and equipment for the construction

and operation of the mine and plant site in South Smoky Canyon . . . .").

      Although "ownership" under the Idaho Recreational Use Statute can take different forms,

that act of simply plowing snow from the Road so as to facilitate access to and from the Smoky

Canyon Mine does not *ipso facto* authorize Simplot to exclude the public, or otherwise prevent

or restrict access by others to the Road.  That much is certain from the language of the Road Use

Permit:

> USE NONEXCLUSIVE.  The privileges granted in this permit to use this road are
> not exclusive.  The Forest Service may use this road and authorize others to use it
> at any and all times.  The Permittee shall use said road in such manner as will not
> unreasonably or unnecessarily interfere with the use thereof by other authorized
> persons, including Forest Service.

*Id*. at p. 3.[1]

      Further, the Road Use Permit – while not requiring snow removal – nonetheless outlines

the conditions and "minimum standards of performance" required of Simplot if Simplot chooses

to plow the Road.  *See id*. at pp. 4-6 ("The Forest Service will not require snow removal,

however the Permittee may remove snow subject to the following conditions. . . .  Work shall be

done in accordance with the following minimum standards of performance: . . .  Snow shall be

---

[1]  In addition, Simplot is required to secure the Forest Service's permission to use the
Road in the event the Road is closed, undercutting any argument that Simplot either owns the
Road or can dictate the terms of its own access (or anyone else's) to the Road.  *See* Road Use
Permit at p. 5, attached as Ex. A to Pls.' SODF (Dkt. 18-1) ("The Permittee may use the road
during periods of closure for access under conditions imposed by the closure *and with the written
permission of the District Ranger*.  He may grant use of the road, during periods of closure, to his
agents, employees, or contractors.  This granting of use shall only be to the Permittees' leases.")
(emphasis added).

**MEMORANDUM DECISION AND ORDER - 7**

removed during the Permittee's operations by removing it from the roadway in a manner that will preserve the road surface, permit proper drainage, and project adjacent resources.").

Finally, even though snow plowing during the times of the year when it is needed means that the Road is more usable in such conditions for all users than it otherwise would be, the fact that the Road is more usable because of the snow removal does not give Simplot the right to regulate access to the Road.  The express terms of the Road Use Permit do not allow for that. Moreover, even if Simplot did not plow the Road, other users could still utilize the Road in such conditions, such as tracked vehicles (e.g., snowmobiles and snowcats), skiers, snowshoers, and other winter users.  In other words, unless the Road was closed by the Forest Service, other users could still use the Road, even if unplowed.  The premise of Simplot's contended "ownership" right to control access to the Road would not apply to users who can use the Road regardless of whether it is plowed or not, including when during the times of the year when snow removal is not an issue.

Additionally, and compellingly, the provisions of I.C. § 36-1604(g) are only consonant with the balance of the Idaho Recreational Use Statue if the funding, maintenance, or improvements are provided to advance recreational purposes.  In other words, if Simplot plowed the Road expressly to provide snowmobilers access to the National Forest, the statute's amendment may be implicated because the plowing itself advanced recreational purposes.  But Simplot did not plow the Road to provide such access; rather, Simplot plows the Road so that its employees (and others doing business there) could access the Smoky Canyon Mine.  The mine operations are the *sine qua non* of Simplot's work on the Road and its Road Use Permit.  *See* Simplot's Mem. ISO MSJ, p. 8 (Dkt. 16-2) ("Although the Forest Service does not require Simplot to remove snow during the winter, *Simplot plows the [R]oad to provide continued access to the Mine.*") (emphasis added).  To hold otherwise would allow Simplot to enjoy the

**MEMORANDUM DECISION AND ORDER - 8**

benefits of the statute's immunity for something unrelated to the statute's purpose.  That

Simplot's snowplowing happens to take place in a National Forest on a forest road does not

convert what amounts to a business necessity into a recreational purpose.[2]

In short, it cannot be said as a matter of law that Simplot either owns the Road or is

entitled to the benefit of Idaho's Recreational Use statute by virtue of only its seasonal plowing

of the Road.  Simplot's Motion for Summary Judgment is denied in these respects.

        2.      <u>Whether Plaintiffs Were Using the Road For "Recreational Purposes" Is a Question of Material Fact Precluding Summary Judgment</u>

The Idaho Recreational Use Statute defines "recreational purposes" broadly, and includes

without limitation:

> [A]ny of the following activities or any combination thereof:  hunting, fishing, swimming, boating, rafting, tubing, camping, picnicking, hiking, pleasure driving, the flying of aircraft, bicycling, running, playing on playground equipment, skateboarding, athletic competition, nature study, waterskiing, animal riding, motorcycling, snowmobiling, recreational vehicles, winter sports, and viewing or enjoying historical, archeological, scenic, geological or scientific sites, when done without charge of the owner.

I.C. 36-1604(b)(5).  At the time of the accident, Plaintiffs were not snowmobiling; they were on

their way to go snowmobiling.  *See* Pls.' Compl., ¶¶ 12-13 (Dkt. 1) ("Lance Magee was the first

truck in a three-truck family group that was going snowmobiling together in the Diamond Creek

drainage on the day before Christmas 2018.  Susan Magee and Lance Magee had dressed in their

snowmobile clothing at their home before they left for the trip.").  Simplot acknowledges the

distinction between these two events, but contends that they combine to reflect a use of the Road

for recreational purposes, stating:

---

    [2]  To the extent Simplot argues that I.C. § 36-1604(d) applies on the theory that its snowplowing "indirectly" encourages recreational purposes, that section of the Idaho Recreational Use Statue speaks to an "owner of land."  I.C. § 36-1604(d) ("Owner Assumes No Liability.  An owner of land . . . .").  Simplot is not the "owner" of the Road.  *See supra*.

**MEMORANDUM DECISION AND ORDER - 9**

Here, at the time of the Accident, Plaintiffs were driving on the Road on their way
to go snowmobiling in the Diamond Creek drainage as part of a family activity.
Specifically, Mr. Magee was operating the GMC with Ms. Magee in the front
passenger seat, and the GMC was the "first truck in a three-truck family group that
was going snowmobiling together in the Diamond Creek drainage on the day before
Christmas 2018."   *Based on this information, it is apparent that Plaintiffs were
using the Road for recreational purposes because they were driving on their way
to go snowmobiling, which is an activity done for pleasure.  Plaintiffs' act of driving
on the Road should be interpreted as pleasure driving, viewing or enjoying scenic
sites, or some other combination of activities within the ambit of the Recreational
Use Statute.   This is because Plaintiffs were driving on the Road as part of
pleasurable activity on Christmas Eve, which was not for any business purpose.
Therefore, the Court should find that Plaintiffs were using the Road without charge
for recreational purposes. . . .   Plaintiffs were using the Road for recreational
purposes as they were driving for pleasure and were using the Road to go
snowmobiling in the Caribou National Forest.*

Simplot's Mem. ISO MSJ, pp. 10-11 (Dkt. 16-2) (citations omitted, emphasis added).

Simplot's argument loses its moorings, however, when one considers the impossibility of

any consistent application of the argument – in particular, as to identifying when a "recreational

purpose" begins and ends.  For instance, under Simplot's reasoning, Idaho's Recreational Use

Statute would apply along a continuum, beginning the moment Plaintiffs pulled out of the

driveway of their home (or perhaps even earlier) to go snowmobiling (well before traveling on

the Road) because, even then, they would be driving "as part of pleasurable activity on

Christmas Eve, which was not for any business purpose."  *Id*.

Such a template is too attenuated in time and place and gives no persuasive support for

the premise that unless an act is for a business purpose, it must be recreational in nature.  Said

another way, if the record supported a conclusion that Plaintiffs were driving the Road for a

specific recreational use (which could include, the Court acknowledges, simply the fact of solely

going on a pleasure drive on the Road), rather than driving the Road for the specific purpose of

reaching a location from which they would then begin their recreational purpose, Idaho's

Recreational Use statute would likely apply.  But that is hard to conclude here, with the Road

**MEMORANDUM DECISION AND ORDER - 10**

functioning primarily as the arterial to and from the Smoky Canyon Mine.  *See supra* (citing Simplot's Mem. ISO MSJ, p. 8 (Dkt. 16-2) (noting that Simplot plows the Road to access Smoky Canyon Mine)).  Instead, the Road was logically the simplest (and apparently the only) route to get to the parking lot near the Smoky Canyon Mine where Plaintiffs could unload their snowmobiles and actually begin their recreation.  That the Road may incidentally provide a route for people to reach areas for understood recreational purposes is not enough and does not, by itself, amount to Plaintiffs using the Road for recreational purposes under the statute.[3]

Though concluding here that driving on the Road to reach a destination from which a recreational activity could begin does not constitute a recreational purpose in and of itself, it is still possible that Plaintiffs were engaging in a recreational purpose when they were driving on the Road that day.  The record is not developed enough – one way or the other –  to resolve this question as a matter of law.  Therefore, owing to this nuanced factual issue, Simplot's Motion for Summary Judgment is denied in this separate respect.

**B.     It Cannot Be Said as a Matter of Law That the Snowplow Involved in the Accident Is Not a Commercial Motor Vehicle**

Plaintiffs' Fourth Cause of Action alleges a violation of the "extreme caution" standard applicable to commercial motor vehicles.  *See, e.g.*, Pls.' Compl., ¶ 48 (Dkt. 1) ("The Code of Federal Regulations specifically addresses adverse weather conditions during the operation of a vehicle and requires drivers to exercise 'extreme caution' when confronted by 'extreme weather.'") (quoting 49 C.F.R. § 392.14).  The specific regulation reads:

---

[3] This distinction is also illustrated by asking the question of how the Idaho Recreational Use Statue would apply, if at all, if the accident had occurred on Plaintiffs' return trip after a day of snowmobiling in the National Forest.  On the return trip, they would not be traveling the Road to the jumping-off-point for their snowmobiling recreation, but would be traveling the Road home.  The recreational purpose was what they intended to do between those two points in time – the snowmobiling – not traveling to/from snowmobiling.

**MEMORANDUM DECISION AND ORDER - 11**

Extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction.  Speed shall be reduced when such conditions exist.  If conditions become sufficiently dangerous, the operation of the commercial motor vehicle shall be discontinued and shall not be resumed until the commercial motor vehicle can be safely operated.  Whenever compliance with the foregoing provisions of this rule increases hazard to passengers, the commercial motor vehicle may be operated to the nearest point at which the safety of passengers is assured.

49 C.F.R. § 392.14.

This standard is inapplicable, Simplot argues, because the snowplow was/is not a commercial motor vehicle.  *See* Simplot's Mem. ISO MSJ, pp. 11-13 (Dkt. 16-2).  Simplot emphasizes that, among other things, a commercial motor vehicle must be used in interstate commerce.  *See* 49 C.F.R. § 390.5 (defining commercial motor vehicle as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property . . . .").  Interstate commerce is defined as:

Interstate commerce means trade, traffic, or transportation in the United States –

(1)    Between a place in a State and a place outside of such State (including a place outside of the United States);

(2)    Between two places in a State through another State or a place outside of the United States; or

(3)    Between two places in a State as part of a trade, traffic, or transportation originating or terminating outside the State or the United States.

*Id.*

Simplot contends that the snowplow falls outside of this definition because it "is stored at the [Smoky Canyon] Mine and does not travel out-of-state for any reason."  Hence, Simplot asserts, it "is not a commercial motor vehicle, which means there is no legal basis for allegations contained in the Fourth Cause of Action of Plaintiffs' Complaint against Simplot."  Simplot's Mem. ISO MSJ, p. 13 (Dkt. 16-2) ("Therefore, the Court should dismiss Plaintiffs' Fourth Cause

**MEMORANDUM DECISION AND ORDER - 12**

of Action against Simplot because 49 C.F.R. § 392.14 does not apply to the Snowplow as it is not a commercial vehicle.").

In the abstract, this inquiry goes beyond just the snowplow itself, as Simplot is well-known as a large food, livestock, and agribusiness company with operations in many states and internationally.  Its businesses include mining for fertilizer manufacturing and distribution, with operations at the Smoky Canyon Mine consisting primarily of open-pit mining for phosphate ore (used in fertilizer production at Simplot's Don Plant in Pocatello, which is then distributed and sold across much of the country).  Simplot is registered with the Federal Motor Carrier Safety Administration ("FMCSA") and is assigned a United States Department of Transportation ("USDOT") number.  All companies that transport passengers or haul cargo across state lines must be registered with the FMCSA and have a valid USDOT number.  Simplot's USDOT number, "US DOT 172901," was affixed on the snowplow at the time of the accident.  In the context of Simplot's integrated business operations, it makes little sense to analyze whether interstate commerce is implicated on a component-by-component basis.  Instead, the snowplow is more sensibly considered a small cog in a very large wheel, operating "[b]etween two places in a State *as part of* a trade, traffic, or transportation originating or terminating outside the State or the United States."  49 C.F.R. § 390.5 (emphasis added).  Here, the use of the snowplow facilitates travel by employees, equipment, vendors, and others to the Smoky Canyon Mine, which is necessary to allow production to occur at the mine.  It therefore follows that the snowplow is "used on a highway in interstate commerce" and, thus, understood to be a commercial motor vehicle within the "extreme caution" standard.  *Id*.

But even if the focus is solely upon the snowplow vehicle, and assuming it is used every year to clear snow from the Road, this does not mean that it does not travel outside of Idaho – particularly given the location of the Road and the Smoky Canyon Mine near the Idaho-

**MEMORANDUM DECISION AND ORDER - 13**

Wyoming border.  A Simplot representative testified that the snowplow "may have gone into Wyoming a few times."  *See* Pls.' Supp. Brief, p. 3 (Dkt. 29) (citing deposition testimony from FRCP 30(b)(6) witness Robert Roberts).  Therefore, even if only the snowplow itself is considered, a question of fact exists as to whether *it* engages in interstate commerce and, thus, a commercial motor vehicle within the "extreme caution" standard.

For these distinct reasons, Simplot's Motion for Summary Judgment is denied in this respect as well.

## IV.  <u>ORDER</u>

Based on the foregoing, IT IS HEREBY ORDERED that Defendant J.R. Simplot Company's ("Simplot") Motion for Summary Judgment (Dkt. 16) is DENIED.  Plaintiffs' counsel must contact Courtroom Deputy Lynette Case within one week following the entry of this Memorandum Decision and Order to make arrangements for all counsel to participate in a telephonic scheduling conference with the Court to set a trial date and pre-trial and trial deadlines.  *See* 11/14/19 Sched. Order, p. 3 (Dkt. 14).

DATED: September 24, 2020

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

MEMORANDUM DECISION AND ORDER - 14