# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN MAGEE, LANCE MAGEE, | Case No.: 4:19-cv-00353-REP |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **PLAINTIFFS' FIRST MOTION IN LIMINE (Dkt. 26)** |
| J.R. SIMPLOT COMPANY, a Nevada Corporation Authorized to do Business in the State of Idaho, | **PLAINTIFFS' MOTION TO EXCLUDE OPINION TESTIMONY AND ANIMATION VIDEO BY DEFENDANT'S EXPERT TORREY ROBERTS (Dkt. 36)** |
| Defendant. | **PLAINTIFFS' MOTION TO EXEMPT THE CLAIMS OF LANCE MAGEE AND SUSAN MAGEE FROM LIMITATIONS IMPOSED BY I.C. § 6-1603 AND TO SUBMIT THE ISSUE OF RECKLESSNESS TO THE JURY (Dkt. 37)** |
| | **PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT TO INCLUDE PRAYER FOR PUNITIVE DAMAGES (Dkt. 39)** |
| | **DEFENDANT'S FIRST MOTION IN LIMINE (Dkt. 54)** |
| | **PLAINTIFFS' SECOND MOTION IN LIMINE (Dkt. 65)** |
| | **DEFENDANT'S SECOND MOTION IN LIMINE (Dkt. 70)** |

Pending before the Court are the following motions: (i) Plaintiffs' First Motion in Limine (Dkt. 26); (ii) Plaintiffs' Motion to Exclude Opinion Testimony and Animation Video by Defendant's Expert Torrey Roberts (Dkt. 36); (iii) Plaintiffs' Motion to Exempt the Claims of

**MEMORANDUM DECISION AND ORDER - 1**

Lance Magee and Susan Magee From Limitations Imposed by I.C. § 6-1603 and to Submit the Issue of Recklessness to the Jury (Dkt. 37); (iv) Plaintiffs' Motion for Leave to Amend Complaint to Include Prayer for Punitive Damages (Dkt. 39); (v) Defendant's First Motion in Limine (Dkt. 54); (vi) Plaintiffs' Second Motion in Limine (Dkt. 65); and (vii) Defendant's Second Motion in Limine (Dkt. 70). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

This is a personal injury action brought by Plaintiffs Susan and Lance Magee ("Plaintiffs") against Defendant J.R. Simplot Company ("Defendant"), arising out of a December 24, 2018 vehicle collision that occurred on Smoky Canyon Road (the "Road") in Caribou County, Idaho. Mr. Magee was driving a 2016 GMC Sierra Truck with Mrs. Magee in the front-passenger seat on a trip to go snowmobiling in the Diamond Creek drainage, driving uphill on the Road and pulling a snowmobile trailer. Headed downhill on the Road from the Smoky Canyon Mine, Defendant's employee was driving a 1997 Kenworth Diesel Truck with an attached snowplow. At a curve in the Road, the two vehicles collided. Plaintiffs were injured in the accident and bring this case against Defendant, asserting claims for (i) negligence, (ii) negligent hiring and retention, (iii) respondeat superior liability, and (iv) violating the "extreme caution" standard in the operation of a commercial motor vehicle. Defendant answers and alleges, among other defenses, the affirmative defense of comparative negligence.

## DISCUSSION

### A.    Plaintiffs' and Defendant's Motions in Limine

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). There is no

express authority for motions in limine in either the Federal Rules of Civil Procedure or the Federal Rules of Evidence. *But see* Fed. R. Evid. 104(a). Nevertheless, these motions are well-recognized in practice and by case law. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 (2000). The key function of a motion in limine is to "exclude prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 (1984).

Judges have broad discretion in ruling on motions in limine. *See United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015) (motion in limine rulings reviewed for abuse of discretion). Moreover, such rulings are provisional and "not binding on the trial judge" or the court. *Ohler*, 529 U.S. at 758, n.3. It is sometimes necessary to defer ruling until trial when a better estimate of the impact of the evidence on the jury can be made by the trial judge. *See Crawford v. City of Bakersfield*, 2016 WL 5870209, at *2 (E.D. Cal. 2016). Generally, motions in limine excluding broad categories of evidence are disfavored, as such issues are more fairly dealt with during trial as the admissibility of evidence arises. *See Sperberg v. Goodyear Tire & Rubber, Co.*, 519 F.2d 708, 712 (6th Cir. 1975).

Here, most of the parties' motions in limine involve challenges to relevance under Federal Rule of Evidence ("FRE") 401 and unfair prejudice under FRE 403. FRE 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[R]elevance is a very low threshold to overcome in determining the admissibility of evidence." *Taylor v. Shippers Transport Exp., Inc.*, 2014 WL 7499046, at *3 (C.D. Cal. 2014). Irrelevant evidence is inadmissible. *See* Fed. R. Evid. 402.

FRE 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence." Fed. R. Evid. 403.  Importantly, Rule 403 is not designed to exclude all prejudicial evidence, only "unfairly" prejudicial evidence substantially outweighed by its probative value.  *See United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).  "[T]he application of Rule 403 must be cautious and sparing.  Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."  *Id*.  Evidence is unfairly prejudicial when it has an "'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  *Id*. (quoting Adv. Comm. Notes to Fed. R. Evid. 403).  The balancing of the unfair prejudice and probative value lies within the court's discretion.  *See United States v. Larios*, 640 F.2d 938, 941 (9th Cir. 1981).

  1. <u>Plaintiffs' First Motion in Limine (Dkt. 26)</u>

  Plaintiffs' First Motion in Limine seeks to preclude the introduction of the following evidence at trial:  (i) Mr. Magee's consumption of alcohol before the accident; (ii) testimony from Defendant's expert relating to the use of snow chains; (iii) Plaintiffs' failure to wear safety restraints; (iv) Mr. Magee's citation for driving left-of-center; and (v) testimony from Defendant's expert on how Mr. Magee could have avoided impacting the snowplow had he been driving 22 miles per hour ("mph") or less.  *See generally* Pls.' MIL (Dkt. 26).  Each argument is addressed below.

   *a.* *Mr. Magee's Consumption of Alcohol*

  Mr. Magee testified that he drank one beer on the morning of the accident.  *See id*. at 1.[1] Plaintiffs argue that such evidence is inadmissible under FRE 403 because there is no evidence

---

[1] At the hearing, Plaintiffs' counsel estimated that Mr. Magee drank the beer approximately two hours before the accident.

that Mr. Magee's consumption of the beer had any impact, effect, or influence on the accident later that day, yet the jury would unfairly speculate that it did. *See id*. at 1-2.

Defendant concedes that it cannot prove that Mr. Magee was operating his vehicle while intoxicated. *See* Def.'s Opp. to Pls.' First MIL at 3 (Dkt. 27). Even so, it argues that Mr. Magee's consumption of the beer is relevant under FRE 401 to its comparative negligence defense, and the jury should determine whether it influenced the accident. *See id*. Further, under FRE 403, Defendant argues that the probative value of the evidence is not substantially outweighed by unfair prejudice because any prejudice can be cured by Mr. Magee's presentation of contrary evidence. *See id.* The Court agrees.

That Mr. Magee drank alcohol before the accident is relevant to Defendant's affirmative defense of comparative negligence. Indeed, ingesting any intoxicant prior to an accident has a tendency to make a fact of consequence – the exercise of ordinary care by that party – more or less probable. *See* Fed. R. Evid. 401. Even if the probative value is slight (because Mr. Magee allegedly drank only one beer two hours before the accident), it must be "substantially outweighed" by the danger of unfair prejudice to be excluded. *See* Fed. R. Evid. 403. Here, Plaintiffs' Motion fails.

The prejudice that might arise from the jury hearing that Mr. Magee drank one beer is neither great nor unfair. Beer is a legal intoxicant, unlike say, heroin. Drinking alcohol prior to driving is not per se illegal. Mr. Magee made the wise decision to allegedly consume only one beer before he took the wheel, and approximately two hours before the accident. The risk that the jury would be inflamed by this set of facts is slight. Yet, it was Mr. Magee's voluntary choice to take that drink and it bears on his exercise of ordinary care, even if Defendant cannot prove that he was intoxicated at the time of the accident. It is true that the evidence may be prejudicial (as evidence tends to be), but under these circumstances, it is not unfairly so. *See,*

*e.g.*, *United States v. Akpa*, 120 F. App'x 717, 720 (9th Cir. 2005) ("Not everything that hurts is unfairly prejudicial."). That is because Mr. Magee can present contrary evidence that he was not impaired, and he is in the best position to do so. In short, on this record, it cannot be said that the evidence's probative value is "substantially outweighed" by a danger of unfair prejudice. *See United States v. Harley*, 2018 WL 11236171, at *2 (S.D. Cal. 2018) ("In performing the [FRE] 403 balancing, a court 'should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'") (quoting *Deters v. Equifax Credit Infor. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000)).

Plaintiffs' First Motion in Limine is denied in this respect.[2]

    b.    *Use of Snow Chains*

Plaintiffs argue that there was no mandate that snow chains were required, or even advised, while driving on the Road. *See* Pls.' MIL at 2 (Dkt. 26). Thus, according to Plaintiffs, Defendant's proposed expert testimony that snow chains would have performed better than bare tires is inadmissible under FRE 401 and 403. *See id*.

Defendant counters that there was a posted and visible sign on the Road at the time of the accident that instructed drivers that snow chains were required when the Road was snow-covered or icy. *See* Def.'s Opp. to Pls.' First MIL at 3-4 (Dkt. 27) (citing Def.'s Ans. to Pls.' Interrog. No. 14, attached as Ex. A to Bottari Decl. (Dkt. 27-1)). Thus, Defendant argues that its proposed expert testimony about snow chain performance is relevant and admissible under FRE 401 and not unfairly prejudicial under FRE 403. *See id*. at 4. The Court agrees.

---

[2] However, the Court orders Defendant to refrain from mentioning Mr. Magee's alcohol consumption in opening statement. The Court wishes to avoid any characterization by counsel prior to the evidence being admitted. The Court will permit questioning on the subject during the examination of Mr. Magee, or other percipient witnesses.

Again, whether Mr. Magee installed snow chains is relevant to Defendant's affirmative defense of comparative negligence; it has a tendency to make Mr. Magee's exercise of ordinary care more or less probable. *See* Fed. R. Evid. 401. Whether FRE 403 might apply to exclude this relevant evidence is another question. That question, in large part, hinges on the presence or absence of a sign mandating or suggesting snow chains. That fact is squarely in dispute at this stage. Thus, on this record, there is no basis for the Court to exclude Defendant's proposed expert testimony.

Plaintiffs' First Motion in Limine is denied in this respect.

c.      *Safety Restraints*

Plaintiffs were not wearing safety restraints at the time of the accident. *See* Pls.' MIL at 2 (Dkt. 26). Plaintiffs argue that Idaho Code § 49-673(8) prohibits Defendant from introducing evidence of this fact to prove contributory or comparative negligence. *See id.* at 2-3 (citing and quoting I.C. § 49-673(8): "The failure to use a safety restraint shall not be considered under any circumstances as evidence of contributory or comparative negligence, nor shall such failure be admissible as evidence in any civil action with regard to negligence."). Defendant concedes the application of § 49-673(8) here. *See* Def.'s Opp. to Pls.' First MIL at 4 (Dkt. 27).

Plaintiffs' First Motion in Limine is granted in this respect. *But see infra* (addressing Defendant's Second Motion in Limine on I.C. § 49-673(8)'s application in medical care setting).

d.      *Mr. Magee's Traffic Citation*

Following the accident, a responding law enforcement officer issued Mr. Magee a traffic citation for driving left of center on the Road, in violation of Idaho Code § 49-635. That charge was apparently dismissed (for reasons not immediately clear to the Court). *See* Pls.' MIL at 3 (Dkt. 26). Plaintiffs argue that the traffic citation is irrelevant under FRE 401. *See id.*

Defendant generally agrees that Mr. Magee's traffic citation is not admissible. *See* Def.'s Opp. to Pls.' First MIL at 4-5 (Dkt. 27) (citing *LaRue v. Archer*, 939 P.2d 586, 589 (Id. Ct. App. 1997) ("The mere fact of *receiving* a traffic citation, by itself, is not admissible evidence in a subsequent civil proceeding arising out of the same accident.") (emphasis added)). However, it argues that the law enforcement officer may still testify about his observations at the scene of the accident. *See id*. The Court agrees.

Observations by percipient witnesses at the scene of the accident, and in its aftermath, are relevant in a subsequent negligence action. Such observations have a tendency to prove how the accident occurred, including providing bases for inferences about the location of impact, speed at impact, and any defensive maneuvers undertaken. *See* Fed. R. Evid. 401. As such, any percipient witness – including the responding law enforcement officer – can testify to what they saw and heard. However, that the responding law enforcement officer made the legal conclusion that there was probable cause to charge Mr. Magee with a traffic citation is irrelevant, and unfairly prejudicial (especially since the citation was later dismissed). *See* Fed. R. Evid. 403.

Accordingly, Plaintiffs' First Motion In Limine is granted insofar as any reference to the traffic citation is excluded; it is denied insofar as the responding law enforcement officer may testify to his percipient observations.

> e.      *Mr. Magee's Speed*

Plaintiffs claim that the posted speed limit on the Road at the time of the accident was 35 mph, that Mr. Magee was driving below the posted speed limit, and that there is no evidence that Mr. Magee's speed was inappropriate or excessive for the conditions. *See* Pls.' MIL at 3 (Dkt. 26). Plaintiffs argue that Defendant's expert testimony that Mr. Magee could have avoided the accident had he been driving at 22 mph is arbitrary; regardless of the speed at which he was driving, Mr. Magee could not have anticipated or avoided Defendant driving a snow plow in the

middle of the Road. *See id.* at 4. Thus, Plaintiffs claim the proposed expert testimony is irrelevant under FRE 401 and unfairly prejudicial under FRE 403, and therefore inadmissible. *See id.* at 3-4.

In response, Defendant argues that a driver traveling at or below the posted speed limit still can be negligent depending on the prevailing conditions. *See* Def.'s Opp. to Pls.' First MIL at 5 (Dkt. 27). That is because the Idaho Code instructs drivers that "[n]o person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing." *See id.* (quoting I.C. § 49-654(1)). As to such potential hazards, Defendant claims that a visible sign on the Road warned Plaintiffs that heavy equipment was working on the Road. *See* Def.'s Opp. to Pls.' First MIL at 6 (Dkt. 27) (citing Def.'s Ans. to Pls.' Interrog. Nos. 14 & 18, attached as Ex. A to Bottari Decl. (Dkt. 27-1)). Accordingly, because Defendant has alleged a comparative negligence defense, it argues that its proposed expert testimony is relevant and admissible under FRE 401 and 403. The Court agrees.

By virtue of Defendant's affirmative defense of comparative negligence, whether Mr. Magee was exercising ordinary care – defined as the care a reasonably careful person would take under similar circumstances – is a consequential fact. *See* Fed. R. Evid. 401. That a driver traveling at 22 mph, and under the conditions prevailing at the time, could have braked and thereby avoided a snow plow – about which the driver arguably was warned may be operating in his lane – has a tendency to inform that ordinary care standard. *See id.* Thus, Defendant's proposed expert testimony is relevant and admissible under FRE 401.

Likewise, Defendant's proposed expert testimony is not unfairly prejudicial under FRE 403. Plaintiffs argue that the proposed expert testimony "has no bearing on to the reality of the case" because, no matter Plaintiffs' speed, Plaintiffs could not have avoided the accident. Pls.' MIL at 3 (Dkt. 26). But this is a jury issue that hinges, in part, upon resolution of the factual

dispute concerning the presence or absence of the warning sign and the Road's conditions. There is no unfair prejudice because Plaintiffs are free to present evidence that there was no warning sign and that their speed could not have factored into the accident. On balance, then, the probative value of the proposed testimony is not substantially outweighed by the danger of unfair prejudice, and the testimony is admissible. *See* Fed. R. Evid. 403.

Plaintiffs' First Motion in Limine is denied in this respect.

2.    Plaintiffs' Second Motion in Limine (Dkt. 65)

Plaintiffs' Second Motion in Limine again seeks to exclude testimony speaking to Plaintiffs' failure to wear safety restraints – this time, Plaintiffs move to exclude testimony by a treating emergency room physician (Dr. Niki Milleson) that, as part of Susan Magee's "medical history,"[3] considered that Mrs. Magee was not wearing her seat belt at the time of the accident. *See generally* Pls.' Second MIL (Dkt. 73). As before, Plaintiffs rely on Idaho Code § 49-673(8). *See supra*.

Defendant argues that Dr. Milleson's testimony is not offered as evidence of Plaintiffs' negligence and thus does not implicate Idaho Code § 49-673(8). *See* Def.'s Opp. to Pls.' Second MIL at 2-5 (Dkt. 73). Instead, Defendant claims that Dr. Milleson's testimony is merely foundational to show how she evaluated the mechanism of the injury and why she pursued the treatment plan that she did. *See id.* at 3-4. The Court agrees with Plaintiff.

Again, Idaho Code § 49-673(8) provides: "The failure to use a safety restraint shall not be considered under any circumstances as evidence of contributory or comparative negligence, nor shall such failure be admissible as evidence in any civil action with regard to negligence." I.C.

---

[3] In this context, Mrs. Magee's "medical history" simply represents the "mechanism of injury/accident" – that is, the circumstances surrounding an accident so that the emergency room physician could identify the potential injuries (and their extent) that should be anticipated. *See* Def.'s Opp. to Pls.' Second MIL at 3-4 (Dkt. 73) (quoting Dr. Milleson's testimony).

§ 49-673(8).  By the plain terms of the statute, the bar on seat belt evidence is limited to its use to establish negligence.  But this is not to say that the testimony is therefore admissible for other purposes here.  Just the opposite, actually.

Even assuming its relevance under FRE 401, FRE 403 precludes Dr. Milleson's testimony.  The probative value proffered by Defendant – to show how Dr. Milleson evaluated the mechanism of the injury and why she pursued the treatment she did – is slight.  *See* Fed. R. Evid. 403.  It is the existence and extent of Mrs. Magee's injuries that is important in this case, not precisely how Dr. Milleson diagnosed them.  The slight probative value of Dr. Milleson's testimony is substantially outweighed by the risk of unfair prejudice.  The risk that the jury will consider the evidence for the precise purpose proscribed by Idaho Code § 49-673(8) – as proof of Mrs. Magee's negligence – is great.  The jury likely would conclude that, even though she was not driving, Mrs. Magee did not exercise ordinary care because she failed to wear her seatbelt under dangerous driving conditions.  Even with a limiting instruction that the jury should not consider the testimony on the issue of Mrs. Magee's comparative negligence, it would be difficult to un-ring that bell.

Accordingly, Plaintiffs' Second Motion in Limine is granted, and Defendant is directed to excise this portion of the transcript and video of Dr. Milleson's deposition testimony, if that deposition testimony is to be offered at trial.

3.    Defendant's First Motion in Limine (Dkt. 54)

Defendant's First Motion in Limine seeks to preclude the following at trial: (i) testimony from Plaintiffs' expert, Andy Sessions, regarding any accident reconstruction and/or causation opinions; (ii) Defendant's "hazmat removal" efforts after the accident; (iii) Defendant's installation of a gate on the Road after the accident; (iv) evidence not disclosed by Plaintiffs in response to Defendant's discovery requests; (v) non-party witnesses from being present in the

courtroom throughout trial; (vi) Plaintiffs' witnesses from testifying to the veracity/credibility of Defendant's witnesses; (vii) Plaintiffs making plays on passion and prejudice during trial; and (viii) Plaintiffs' counsel misstating testimony while questioning witnesses or during argument. *See generally* Def.'s First MIL (Dkt. 54). Each argument is addressed below.

        *a.*     *Andy Sessions*

On March 13, 2020, Plaintiffs designated Andy Sessions as an expert witness. *See* Pls.' Desig. of Expert Witnesses at 2-4, attached as Ex. A to Bottari Decl. (Dkt. 54-2). As a volunteer firefighter with the Afton Volunteer Fire Department, he responded to the scene of the accident and took photographs. *See id.* at 2-3. He also owns Custom Image Auto Body in Afton, Wyoming and was hired to repair Plaintiffs' vehicle following the accident. *See id.* at 3. In these dual capacities, Plaintiffs submit that Mr. Sessions will offer expert opinions that: (i) Mr. Magee was in his lane of travel when he was struck by the snowplow; (ii) the snowplow was in Mr. Magee's lane of travel; (iii) the snowplow moved to the right; (iv) Mr. Magee moved to the left; (v) after the collision, the snowplow was moved to the proper lane where it appears in photographs; (vi) the blade of the snowplow struck the GMC Sierra; (vii) the blade of the snowplow raked along the side of the GMC Sierra and the snowmobile trailer; (viii) the snowplow pushed the GMC Sierra to the left and off of the roadway. *See id.* at 3-4; *see also* Pls.' Witness List at 2-3 (Dkt. 49).

Defendant moves to exclude the majority of these opinions, insofar as they amount to an accident reconstruction and address the cause of damage to Plaintiffs' vehicle, arguing that (i) Plaintiffs failed to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure by not disclosing a written report for Mr. Sessions's "accident reconstruction opinions relating to how the damage to the GMC was generated"; (ii) Mr. Sessions is not qualified to opine on the cause of damage to Plaintiffs' vehicle; and (iii) Plaintiffs did not disclose the principles and methods

underlying Mr. Sessions's causation opinions as is required under FRE 702. *See* Def.'s Mem. ISO First MIL at 7-12 (Dkt. 54-1).[4] Because the Court agrees that Mr. Sessions is not qualified to render the proposed expert opinions and has not disclosed reliable principles and methods as required by Rule 702, it does not need to resolve whether Plaintiffs' complied with Rule 26(a)(2)(B).[5] Accordingly, Mr. Sessions is precluded from offering expert opinion, but will be permitted to testify to his observations as a percipient witness.

Mr. Sessions may not offer expert opinion testimony because he is not qualified as an expert in accident reconstruction or damage causation under FRE 702. FRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[4] Defendant also claims that certain of Mr. Sessions's above-noted opinions are "new" and "were improperly disclosed after Plaintiffs' expert witness disclosure deadline." Def.'s Mem. ISO First MIL at 4, 11-12 (Dkt. 54-1). The Court disagrees. To be sure, Plaintiffs' March 13, 2020 Designation of Expert Witnesses contains all 12 opinions. *See* Pls.' Desig. of Expert Witnesses, attached as Ex. A to Bottari Decl. (Dkt. 54-2).

[5] The Court declines to reach the Rule 26(a)(2)(B) issue because the record is unsettled on the nuanced issue of whether Mr. Sessions was retained or not. *See* Fed. R. Civ. P. 26(a)(2)(B) (requiring retained experts to provide written reports). The Court has considered the apparent facts that Mr. Sessions was not paid to render his opinion and Plaintiffs' counsel did not provide additional information to Mr. Sessions as part of the litigation. Yet, Mr. Sessions apparently formalized his opinions after speaking with Plaintiffs' counsel and his opinions arguably are outside the scope of his percipient observation. *Compare In re Application of Republic of Ecuador*, 280 F.R.D. 506, 511 (N.D. Cal. 2012) ("The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others in a manner other than by being a percipient witness to the events in issue.") (quoting *United States v. Sierra Pacific Indus.*, 2011 WL 2119078, at \*4 (E.D. Cal. 2011)), *with Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011) (holding that treating physicians were retained experts where they formed their opinions after treatment for purposes of litigation, and their opinions were outside the scope of the treatment they rendered).

(b)     the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "An expert's testimony must stay within the reasonable confines of his subject area." *Cusack v. BendPak, Inc.*, 2018 WL 3939318, at *5 (D. Idaho 2018) (quoting *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir.2011). An expert's testimony that strays beyond his area of expertise is subject to exclusion. *See Stewart Title Ins. Co. v. Credit Suisse*, 2015 WL 4250704, at *11 (D. Idaho 2015).

Here, Mr. Sessions's technical expertise is in firefighting and auto repair, not accident reconstruction or damage causation. Defendant argues that, "[b]eing qualified to testify regarding collision repair is not the same as being qualified to testify regarding the cause of damage to a vehicle." Def.'s Mem. ISO First MIL at 10 (Dkt. 54-1). The Court agrees. Courts generally require an expert in accident reconstruction and damage causation to have specialized training in the field. *See, e.g., Rodriguez v. JLG Indus., Inc.*, 2012 WL 12882925, at *9 (C.D. Cal. 2012) ("Whether an expert's accident reconstruction opinions are admissible turns on her experience in the particular field, experience in accident reconstruction, and the basis on which she bases her conclusions. . . . Several courts require that an expert offering accident reconstruction testimony have training in the accident reconstruction field."); *Sherwood v. BNSF Ry. Co.*, 2019 WL 943467, at *7 (D. Idaho 2019) (observing that "Mr. Greear has 1,015 hours of formal crash investigation and crash reconstruction training, he has been certified by the Accreditation Commission for Traffic Accident Reconstructionist, he has years of experience as a collision investigator and reconstructionist, and he teaches crash investigation and

reconstruction classes at the Idaho Peace Officers Standards and Training (POST) and Washington Criminal Justice Training Center (WCJTC).").

Mr. Sessions has no such training, experience, or qualification.  Instead, he has training and experience as a volunteer firefighter and more than 40 years of experience in repairing damaged vehicles.  *See, e.g.*, Pls.' Opp. to Def.'s First MIL at 4 (Dkt. 63).  Simply put, this training and experience does not qualify him to connect-the-dots between what he observed at the scene of the accident and in his body shop, to what caused the accident or the damage to the Plaintiffs' truck and trailer.

Moreover, Plaintiffs have not provided any particularized principles or methods by which Mr. Sessions reached his opinions regarding accident reconstruction and damage causation, so that this Court could assess the reliability of those principles, methods, and opinions.  *See Primiano v. Cook,* 598 F.3d 558, 565 (9th Cir. 2010) (observing that expert testimony is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.").  Plaintiffs offer only the conclusory statement that "[h]ow the damage occurred is integral to repair of that damage."  Pls.' Opp. to Def.'s First MIL at 5 (Dkt. 63).  The Court does not agree.  An automobile repairman can no more reliably opine about the cause of damage to a vehicle than a mortician can reliably opine about the cause of death of the deceased.  While both of them may believe they know what happened (and in many instances might be correct), neither of their bald opinions are clearly rooted in reliable principles and methods.  FRE 702 requires this and, as such, precludes Mr. Sessions's testimony concerning accident reconstruction and damage causation.

This does not mean that Mr. Sessions is altogether precluded from testifying.  He may testify to his percipient observations when he arrived on the accident scene, when the Plaintiffs' damaged vehicle arrived at his body shop, and the work he did to repair the vehicle.  To be clear,

however, he may not offer any opinion about how the accident occurred or how the damage to Plaintiffs' vehicle was caused.

Defendant's First Motion in Limine is granted in this respect.

### b. Defendant's Hazmat Removal Efforts

Defendant argues that evidence that it did not engage in hazmat removal measures following the accident should be precluded as irrelevant under FRE 401 and 402, and unfairly prejudicial, confusing, and misleading under FRE 403. *See* Def.'s Mem. ISO MIL at 12 (Dkt. 54-1). Plaintiffs disagree, arguing that Defendant's failure to treat the hazmat spill is evidence of recklessness. *See* Pls.' Opp. to Def.'s MIL at 7 (Dkt. 63).

That Defendant may not have undertaken specific post-accident clean-up steps does not inform the questions surrounding how the accident occurred – exactly what this case is about. Said another way, the recklessness Plaintiffs seek to attribute to Defendant by this fact cannot retroactively apply to assess fault. Such evidence is therefore not evidence of a fact of consequence and, thus, is inadmissible under FRE 401, 402, and 403.

Defendant's First Motion in Limine is granted in this respect.

### c. Defendant's Installation of Gates on the Road

Defendant argues that evidence of its installation of a gate on the Road after the accident should be precluded because it would compel an inference that it was negligent for not having done so before the accident. *See* Def.'s Mem. ISO MIL at 13 (Dkt. 54-1). Plaintiffs do not seem to disagree, responding that they do not intend to offer such evidence during their case-in-chief; however, Plaintiffs reserve the right to offer such testimony in rebuttal if Defendant opens the door by offering evidence of closure of the Road, or signage that the Road was closed, after the accident. *See* Pls.' Opp. to Def.'s MIL at 9 (Dkt. 63).

In light of the parties' respective positions, there is no issue for the Court to resolve at this time. If the issue again arises during trial, the Court reminds the parties that FRE 407 applies to such evidence. *See* Fed. R. Evid. 407 ("When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures.").

Defendant's First Motion in Limine is granted in this respect.

> d.    *Evidence Not Disclosed in Discovery Responses*

Defendant argues that Plaintiffs should be prohibited from introducing at trial any evidence that Defendant requested and Plaintiffs failed to disclose during discovery. *See* Def.'s Mem. ISO MIL at 13 (Dkt. 54-1). Plaintiffs do not respond this argument, presumably agreeing that the parties are bound by their existing discovery responses. Therefore, there is no issue for the Court to resolve in light of the parties' respective positions.

Defendant's First Motion in Limine is granted in this respect.

> e.    *Presence of Non-Party Witnesses*

Defendant argues that Plaintiffs' non-party witnesses should be excluded from the courtroom during the course of the trial so they cannot hear the testimony of other witnesses. *See id*. at 13-14. Plaintiffs are in agreement (as to all witnesses, not just their own). *See* Pls.' Opp. to Def.'s MIL at 9 (Dkt. 63). There is therefore no issue for the Court to resolve in light of the parties' respective positions.

Defendant's First Motion in Limine is granted in this respect.

f.    *Plaintiffs' Witnesses' Opinions Regarding the Veracity or Credibility of Defendant's Witnesses*

Defendant argues that commentary by Plaintiffs' witnesses regarding the veracity or credibility of Defendant's witnesses invades the province of the jury, and thus, is improper and should be excluded.  *See* Def.'s MIL at 14 (Dkt. 54-1).  Plaintiffs represent that they do not intend to offer such testimony.  *See* Pls.' Opp. to Def.'s MIL at 9 (Dkt. 63).

Defendant's First Motion in Limine is granted in this respect.

g.    *Plays to Passion and Prejudice*

Plaintiffs allege that Defendant engaged in a "cover up" by failing to conduct a post-accident investigation and report the results to the United States Department of Transportation ("USDOT"), as apparently required by USDOT regulations.  *See* Pls.' Opp. to Def.'s MIL at 10-11 (Dkt. 63).  Plaintiffs contend that evidence of Defendant's failure to conduct the investigation and report the results to the USDOT is relevant to proving that Defendant's conduct was oppressive, wanton, malicious, or outrageous so as to justify punitive damages.  *See id.*  Plaintiffs intend to raise the issue, and offer the term "cover up," during voir dire.  *See* Pls.' Proposed Voir Dire at 3 (Dkt. 52).

Defendant objects.  Defendant claims that the allegation is speculative and baseless, and the term "cover up" is inflammatory and plays to the passions of the jury.  *See* Def.'s MIL at 14-15 (Dkt. 54-1).  Defendant moves to exclude the argument.  *See id.*  The Court generally agrees with Plaintiffs, with a caveat.

To the extent that Defendant was required to investigate the accident and submit a report to the USDOT about it, but did not, such evidence is relevant to Defendant's negligence.  It tends to prove that the Defendant may have believed it was responsible for the accident and did not

want to document its negligence, so it intentionally did not file the report.[6]  Accordingly,

evidence of Defendant's failure to investigate and file the report, if it exists, is admissible.  *But*

*see infra* (questioning alleged existence of bad state of mind in context of Plaintiffs' Motion for

Leave to Amend Complaint to Include Prayer for Punitive Damages).

However, the Court instructs Plaintiffs *not* to use the term "cover up" before such

evidence is admitted (including in voir dire).  Prior to the admission of such evidence, the term is

inflammatory and should not be put before the jury.  Additionally, the Court cautions that, even

after the admission of such evidence, overuse of an arguably inflammatory term can warrant a

mistrial.  *See, e.g.*, *Settlegoode v. Portland Pub. Schs.*, 362 F.3d 1118, 1129 (9th Cir. 2004)

(mistrial warranted on ground of attorney misconduct during trial when flavor of misconduct

"sufficiently permeates" entire proceeding to degree that "the jury was influenced by passion and

prejudice in reaching its verdict.").

Defendant's First Motion in Limine is granted, in part, and denied, in part, in this respect.

### h.     *Misstating Deposition Testimony*

Defendant requests that Plaintiffs' counsel be precluded from misstating deposition

testimony during questioning (or otherwise) at trial.  *See* Def.'s Mem. ISO MIL at 15-16 (Dkt.

54-1).  Plaintiffs simply respond that trial presentation will conform to the Idaho Rules of

Professional conduct.  *See* Pls.' Opp. to Def.'s MIL at 11 (Dkt. 63).

Setting aside for now the requirements of Rule 3.3 of the Idaho Rules of Professional

Conduct ("Candor Toward the Tribunal"), in most instances, citing out-of-court deposition

testimony as a predicate for a question at trial violates the hearsay rules and should rarely occur

outside of the context of proper impeachment for prior inconsistent statement under FRE

---

[6] Of course, Defendant might have a completely innocuous explanation, like mere oversight.  But that will play out before the jury.

801(d)(1)(A), or proper rehabilitation for prior consistent statement under FRE 801(d)(1)(B).

Such proper impeachment or rehabilitation usually involves direct quotes from the prior

inconsistent or prior consistent statement, and confrontation or corroboration of the witness's

trial testimony therewith.  Accordingly, if the parties conform to the Rules of Evidence, it is

unlikely this issue will be problematic.  To the extent that a party strays from the Rules of

Evidence, it is the responsibility of the opposing party to state the proper objection.[7]

     Defendant's First Motion in Limine is denied in this respect.

     4.     <u>Defendant's Second Motion in Limine (Dkt. 70)</u>

     On March 13, 2020, Plaintiffs designated four of their treating physicians as non-retained

expert witnesses.  *See* Pls.' Desig. of Expert Witnesses, attached as Ex. A to Bottari Decl. (Dkt.

70-2).  Regarding Dr. Beck, Plaintiffs disclosed that he would "testify regarding the diagnosis of

the injuries Susan Magee and Lance Magee suffered, the care that was required to surgically

correct those injuries, the course of hospitalization demanded by the surgical procedures and the

follow-up care and treatment provided by him."  *Id.* at 8-10.  Regarding Dr. Stucki, Plaintiffs

disclosed that he would "provide the details of his involvement in the care and treatment of

Susan Magee."  *Id.* at 10.  Regarding Dr. Carter, Plaintiffs disclosed that he would "describe the

nature and extent of the care he provided."  *Id.* at 10-11.  Regarding Dr. Milleson, Plaintiffs

disclosed that she would "provide a chronology of the treatment that was provided to both Susan

Magee and Lance Magee while they were in the emergency room.  She will describe the nature

---

[7]  In this regard, the Court reminds the parties that it did not participate in depositions and has not reviewed transcripts, so the Court is not in a position to rule on objections for "misstating the evidence" without interrupting trial to review the deposition transcript.  The Court does not intend to do this with any frequency.  Instead, the offended party can object to hearsay or improper impeachment or rehabilitation, and highlight any misstatements during cross examination or re-direct examination.

and extent of the injuries each had sustained." *Id.* at 11-12.  For each of the experts, Plaintiffs

further described in detail the treatment they rendered.  *See id.* at 8-12.  However, Plaintiffs did

not disclose prognoses and recommended future medical treatment.

In April and May 2021, the parties took the trial depositions of these doctors.  *See* Def.'s

Mem. ISO Second MIL at 2 (Dkt. 70-1).  According to Defendant, during the depositions of Drs.

Beck, Stucki, and Carter, Plaintiffs' counsel elicited facts and opinions from them that were not

disclosed by Plaintiffs pursuant to Rule 26(a)(2)(C), namely those involving prognoses and

recommended future medical treatment.[8]   Further, according to Defendant, Dr. Carter testified to

certain opinions that he admitted were beyond his qualifications under FRE 702.  *See id*.

Defendant seeks to exclude these facts and opinions.

Plaintiffs summarily respond that they provided an adequate summary of the facts and

opinions to be presented by their non-retained medical experts.  *See* Pls.' Opp. to Def.'s Second

MIL at 4 (Dkt. 74).  However, they offer no real argument for why their summary omitted

prognoses and recommended future medical treatment.  Perhaps recognizing this, they argue

that, even if their expert witness designation was inadequate under Rule 26(a)(2)(C), their failure

to disclose these subjects is harmless under Rule 37(c)(1).  *See id.*  They primarily allege

harmlessness because Defendant's two retained medical experts – Dr. Hugh Selznick and Dr.

Rodde Cox – expressed opinions on prognoses and recommended future medical treatment that

are substantially the same as the undisclosed opinions of Plaintiffs' medical experts, and well

---

[8]  More specifically, according to Defendant, Dr. Beck improperly testified regarding
Mrs. Magee's future medical treatment and prognosis; Dr. Stucki improperly testified to Mrs.
Magee's medical treatment for adhesive capsulitis, his recommendation to remove the medical
hardware from her shoulder, her potential need for a shoulder replacement surgery, and her
current pain levels and range of motion; and Dr. Carter improperly testified to the prognosis for
Mrs. Magee's facial paralysis, addiction to pain medication, memory dysfunction, and the long-
term effects of imaging studies on her.  *See* Def.'s Mem. ISO Second MIL at 2-6 (Dkt. 70-1).

before the depositions of Plaintiffs' medical experts.  *See id.* at 5-9.  Thus, Plaintiffs allege,

Defendant has suffered no surprise or prejudice from the undisclosed deposition testimony of

Plaintiffs' medical experts.  *See id*.

There is no dispute that Plaintiffs medical experts are non-retained experts under Rule

26(a)(2)(C).  Even though non-retained experts are not required to submit written reports under

Rule 26(a)(2)(B) (*see supra*), they still must be properly disclosed under Rule 26(a)(2)(A).  In

such a setting, that means that, for each non-retained expert, the disclosure "must state: (i) the

subject matter on which the witness is expected to present evidence under [FRE] 702, 703, or

705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

Fed. R. Civ. P. 26(a)(2)(C).

Rule 37(c)(1) addresses the consequences of a party's failure to provide information

required by Rule 26(a)(2)(C), stating "the party is not allowed to use that information or witness

to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially

justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In determining whether Rule 37(c)(1)'s

exclusionary sanction should be imposed, "the burden is on the party facing the sanction . . . to

demonstrate that the failure to comply with Rule 26(a) is substantially justified or harmless."

*Torres v. City of Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).  When Rule 37 was amended

in 1993 to add subsection (1), the Advisory Committee noted that it "provides a strong

inducement for disclosure of material that the disclosing party would expect to use as evidence"

at trial.  Fed. R. Civ. P. 37 Adv. Comm. Note (1993 Amend.).  It is intended to "put teeth" into

the mandatory disclosure requirements of Rule 26(a).  *Ollier v. Sweetwater Union High Sch.*

*Dist.*, 768 F.3d 843, 861 (9th Cir. 2014).  The district court's discretion is given "particularly

wide latitude" regarding sanctions under Rule 37(c)(1).  *Id*. at 859.

Factors that may assist the court in determining whether a violation of a disclosure requirement is justified or harmless are: "(i) prejudice or surprise to the party against whom the evidence is offered; (ii) the ability of that party to cure the prejudice; (iii) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010). With these factors in mind, despite the apparent congruity amongst the parties' medical experts regarding the at-issue testimony (Defendant's counsel has not highlighted any obvious differences and the Court has not separately examined the record to confirm as much), it still cannot be said that Defendant will not be prejudiced if the testimony is permitted.

Because trial depositions are involved, the testimony elicited therein is the functional equivalent of trial testimony. In other words, the testimony is "baked" and ready to be presented to the jury (but for Defendant's objections considered here). The problem, therefore, is at least two-fold – not only was Defendant's counsel not able to adequately prepare for the depositions and cross-examine these doctors on the previously-undisclosed opinions, Defendant's experts are not able to reconsider and possibly change their positions in light of this new testimony without running afoul of Rules 26(a)(2) and 26(e) themselves. This reality constitutes prejudice and surprise and is consequently not harmless. The undisclosed testimony of Doctors Beck, Stucki, and Carter regarding prognoses and future medical treatment is therefore excluded.[9]

---

[9] Dr. Carter's testimony surrounding (i) the prognosis for Mrs. Magee's facial paralysis, (ii) whether her breast infection was related to surgeries following the accident, (iii) whether she has Post Traumatic Stress Disorder ("PTSD"), and (iv) whether her depression was caused by the accident is separately inadmissible under FRE 702. By Dr. Carter's own admission, he is not qualified to testify on these matters. *See* Def.'s Mem. ISO Second MIL at 11-12 (Dkt. 70-1) (citing Carter Dep. at 27:18-28:11; 28:23-29:7; 34:25-37:5; 51:20-52:23, attached as Ex. D to Bottari Decl. (Dkt. 70-2)). Plaintiffs offer no real counter to these shortcomings in Dr. Carter's specific testimony, except to say that "[t]he proffered expert testimony of the physicians who treated [Plaintiffs] is properly grounded, well-reasoned, and not speculative." *See* Pls.' Opp. to Def.'s Second MIL at 7-11 (Dkt. 74). Whether Dr. Carter's testimony is grounded, well-

Defendant's Second Motion in Limine is granted.[10]

**B.     Plaintiffs' Motion to Exclude Opinion Testimony and Animation Video by Defendant's Expert Torrey Roberts (Dkt. 36)**

On April 15, 2020, Defendant disclosed Torrey Roberts as a retained expert witness who will testify to the opinions and conclusions contained within his contemporaneously-filed expert report. Relevant here, Mr. Roberts's report contains an "accident avoidance analysis," which Plaintiffs seek to exclude, arguing that it (i) exceeds the scope of Mr. Roberts's retention, and (ii) is unrelated to the cause of the wreck being investigated, and thus, is irrelevant and inadmissible. *See* Pls.' Mem. ISO Mot. to Exclude at 1-2 (Dkt. 36-1). The Court disagrees.

First, there is no question that Mr. Roberts was retained to perform an "accident reconstruction analysis" – he stated that in his report. *See id*. at 3. Plaintiffs seem to argue that, because Mr. Roberts's report identifies the scope of his work as simply conducting an accident reconstruction analysis, the apparently-distinct "accident avoidance analysis" *within the same report* should be excluded. Except, Mr. Roberts testified in no uncertain terms that his accident avoidance analysis was part of his accident reconstruction analysis. *See id*.

The Court will not question how Mr. Roberts characterized his assignment, how he completed that assignment, or how he then reduced his opinions into a report, except to say that his entire work product (to include his "accident avoidance analysis") is contained within the

_____

reasoned, and not speculative does not make it admissible under FRE 702 if he is not qualified to give it; he is not. His testimony on these subjects is separately excluded under FRE 702. *See Stewart Title*, 2015 WL 4250704, at *11 (expert's testimony that strays beyond area of expertise is subject to exclusion).

[10]   The Court is not in a position to parse through the deposition testimony and definitively identify the admissible and inadmissible testimony from Drs. Beck, Stucki, and Carter. Instead, the parties are directed to reach an agreement on the portions of testimony that are admissible, consistent with this Memorandum Decision and Order. If they cannot, they are to lodge their positions with the Court in enough time for the parties to incorporate the Court's rulings during trial when these deposition testimonies are to be introduced.

report provided to Plaintiffs on April 15, 2020. That Plaintiffs may believe that an "accident avoidance analysis" is not the same as an "accident reconstruction analysis" is nothing more than a subjective semantical exercise and not enough to warrant exclusion under Rules 26(a)(2)(B) and 37(c)(1). This is especially true where Plaintiffs later deposed Mr. Roberts on the opinions and conclusions contained within his report, including, again, both his "accident reconstruction analysis" and "accident avoidance analysis."

Second, as repeatedly stated elsewhere in this Memorandum Decision and Order, whether Mr. Magee was negligent in the operation of Plaintiffs' vehicle and whether such negligence, if any, was a proximate cause of the accident are relevant components of Defendant's affirmative defenses. *See supra* (discussing use of snow chains and Mr. Magee's speed alongside FRE 401, 402, and 403). Mr. Roberts's accident avoidance analysis clearly has a tendency to make this fact more or less probable and is therefore relevant and admissible for the same reasons.

Plaintiffs' Motion to Exclude Opinion Testimony and Animation Video by Defendant's Expert Torrey Roberts is denied.

**C.     Plaintiffs' Motion to Exempt the Claims of Lance Magee and Susan Magee From Limitations Imposed by I.C. § 6-1603 and to Submit the Issue of Recklessness to the Jury (Dkt. 37)**

Idaho's $250,000 limitation on noneconomic damages does not apply to "causes of action arising out of willful or reckless misconduct." I.C. § 6-1603(4)(a). "'Willful or reckless misconduct' means conduct in which a person makes a conscious choice as to the person's course of conduct under circumstances in which the person knows or should know that such conduct both creates an unreasonable risk of harm to another and involves a high probability that such harm will actually result." I.C. § 6-1601(10). Plaintiffs ask the Court to exempt their claims from the cap on noneconomic damages, effectively requesting that the Court conclude

that Defendant's conduct constituted willful or reckless misconduct. *See generally* Pls.' Mot. to Exempt (Dkt. 37). The Court will not at this juncture.

It is clear that Plaintiffs strongly believe that Defendant's conduct in the moments leading up to the accident amounted to willful or reckless misconduct such that Idaho Code § 6-1603's limitation on noneconomic damages does not apply. But a determination of whether a party's conduct rises to the level of willful or reckless misconduct requires consideration of all evidence, not just Plaintiffs' evidence. Until then, Plaintiffs' request is premature – the issue surrounding the jury's consideration of whether Defendant was willful or reckless must await a more complete record.

Plaintiffs' Motion to Exempt the Claims of Lance Magee and Susan Magee From Limitations Imposed by I.C. § 6-1603 and to Submit the Issue of Recklessness to the Jury is denied.

**D.      Plaintiffs' Motion for Leave to Amend Complaint to Include Prayer for Punitive Damages (Dkt. 39)**

Plaintiffs seek leave to amend their Complaint to add a claim for punitive damages against Defendant, claiming that they "have presented sufficient evidence of repeated violations of standards of conduct by Defendant to establish a 'reasonable likelihood' they will be able to support an award of punitive damages at trial." Pls.' Mem. ISO Mot. to Am. at 2 (Dkt. 39). Defendant opposes the Motion, arguing that (i) Plaintiffs' amendment efforts are untimely, and (ii) Plaintiffs have not shown that Defendant's conduct and state of mind rise to the level required to sustain a claim for punitive damages. *See* Def.'s Opp. to Mot. to Am. at 2 (Dkt. 41).

A punitive damages claim is substantive in nature, and accordingly, controlled by Idaho law in diversity cases. *See Strong v. Unumprovident Corp.*, 393 F. Supp. 2d 1012, 1025 (D. Idaho 2005). Under Idaho law, "no claim for punitive damages shall be filed containing a prayer

for relief seeking punitive damages." I.C. § 6-1604(2). Instead, a party may seek to amend the pleadings to add a claim for punitive damages and the court "shall allow the motion to amend the pleadings if, after weighing the evidence presented, the court concludes that, the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id*. To support an award of punitive damages at trial, "the claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." I.C. § 6-1604(1).

Putting the standards together, to succeed on their Motion to Amend, Plaintiffs must establish a reasonable likelihood of proving by clear and convincing evidence that Defendant's conduct was oppressive, fraudulent, malicious or outrageous. It is well-established in Idaho that punitive damages are not favored, should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits. *See Manning v. Twin Falls Clinic & Hosp., Inc.*, 830 P.2d 1185, 1190 (Idaho 1992) (citing *Jones v. Panhandle Distributors, Inc.*, 792 P.2d 315 (Idaho 1990)). The decision whether to submit the punitive damages question to a jury rests within the sound discretion of the trial court. *See id*.

"The determination of whether a party should be permitted to assert a claim for punitive damages is not based upon the type of case or claim [but instead] . . . revolves around whether the plaintiff is able to establish the requisite intersection of two factors: a bad act and a bad state of mind." *Todd v. Sullivan Const. LLC*, 191 P.3d 196, 201 (Idaho 2008) (citing *Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004)). The defendant must (i) act in a manner that was extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – the likely consequences, and must (ii) act with an extremely harmful state of mind, described variously as with malice, oppression, fraud, or outrageousness. *See Myers*, 95 P.3d at 983; *see also* I.C. § 6-1604(1). Simple negligence does not support an award of punitive

damages.  *See Inland Grp. of Companies, Inc. v. Providence Wash. Ins. Co.*, 985 P.2d 674, 684

(Idaho 1999).  Further, reckless, wanton, or grossly negligent conduct alone is no longer

sufficient to support an award of punitive damages under Idaho law.  *See Cummings v. Stephens*,

336 P.3d 281, 296 n.5 (Idaho 2014).

　　Here, Plaintiffs assert that Defendant committed a sufficiently bad act with the requisite

bad state of mind, owing to Defendant's (i) "Violation of the U.S. Forest Service Road Use

Permit Standard"; (ii) "Violation of J.R. Simplot Company safety policy"; (iii) "Violation of I.C.

§ 49-634 Driving Left of Center in an Area the Operator Knew to be Dangerous"; and (iv)

"Applicability of the 'extreme caution' standard to the operation of its 1997 Kenworth

snowplow."  Pls.' Mem. ISO Mot. to Am., 2-6 (Dkt. 39-1).  For the following reasons, these

stated bases – either singularly or in combination – do not rise to the level of warranting a claim

for punitive damages.

　　To begin, the violations that Plaintiffs contend exist are just that – alleged violations.

Plaintiffs offer no more justification for punitive damages, except to say:  "The cumulative effect

of serial violations by Defendant of safety standards, statutes, and U.S. Forest Service criterion

demonstrates that [Plaintiffs] have demonstrated a 'reasonable likelihood' that they are able to

support an award of punitive damages at trial."  *Id.* at 6.  This conclusory statement is not

enough.  While it may be the case that Defendant violated a duty of care if and when it violated a

particular standard, policy, or statute, that reality informs the issue of simple negligence.  Absent

a more robust analysis into these alleged breaches' circumstances, [11] they cannot operate to

---

[11]  Idaho courts have identified five factors to consider in determining whether a
defendant's conduct is an extreme deviation from reasonable standards of conduct: (i) did
defendant's unreasonable conduct actually cause harm to the plaintiffs? (ii) have plaintiffs
presented expert testimony? (iii) is there a special relationship of trust and confidence between
the parties? (iv) is there evidence of a continuing course of oppressive conduct? and (v) have
plaintiffs offered proof of defendant's knowledge of the likely consequences of their conduct?

establish the sort of "extreme deviation from reasonable standards of care" that would represent the predicate "bad act" required to support a claim for punitive damages.

More problematic, however, is Plaintiffs' almost complete absence of any assessment into Defendant's "bad state of mind," except to imply that gross negligence follows a combination of negligent acts. *See id.* Even if that is the case, gross negligence is insufficient to establish an "extremely harmful state of mind." *See Cummings*, 336 P.3d at 296 n.5 ("Since the enactment of [I.C. § 6-1604(1) in 1987], gross negligence or deliberate or willful conduct is not sufficient for an award of punitive damages."); *see also Murray v. City of Bonners Ferry*, 2017 WL 4318738, at *2 (D. Idaho 2017). At bottom, while the evidence may ultimately suggest that Defendant breached its duty of care, Plaintiffs have not established a reasonable likelihood of showing that Defendant acted in a manner that was "oppressive, fraudulent, malicious, or outrageous." Plaintiffs may be correct that Defendant was negligent, or even grossly negligent; but they have not shown that Defendant acted with the requisite "bad state of mind" to warrant a claim for punitive damages.

Plaintiffs' Motion for Leave to Amend Complaint to Include Prayer for Punitive Damages is denied.[12]

---

*See Does I-XIX v. Boy Scouts of Am.*, 2019 WL 1676212, at *1 (D. Idaho 2019) (citing *Thurston Enters., Inc. v. Safeguard Business Systems, Inc.*, 2019 WL 667966, at *12 – 13. (Idaho 2019)).

[12]  Though not material to the disposition of this issue, the Court nonetheless addresses Defendant's timeliness objection to Plaintiffs' amendment efforts. Defendant correctly notes that the Court's November 14, 2019 Scheduling Order contains a June 13, 2020 deadline to seek punitive damages. *See* 11/14/19 Sched. Order, 1 (Dkt. 14). In this strict sense, Plaintiffs' Motion to Amend is untimely and must confront Rule 6(b)(1)(B)'s good cause and excusable neglect standards. However, keeping in mind that a plaintiff may move to submit a claim for punitive damages to the jury during trial *following* the presentation of evidence, the Court understands the deadline to be more aspirational in nature, allowing the Court the opportunity to consider the issue of punitive damages earlier for the benefit of parties headed toward trial. *See Roost Project, LLC v. Andersen Const. Co.*, 2020 WL 3895757, at *4-5 (D. Idaho 2020) (compiling cases from District recognizing plaintiff's ability to seek punitive damages to

# ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that:

i.       Plaintiffs' First Motion in Limine (Dkt. 26) is GRANTED, in part, and DENIED, in part;

ii.      Plaintiffs' Motion to Exclude Opinion Testimony and Animation Video by Defendant's Expert Torrey Roberts (Dkt. 36) is DENIED;

iii.     Plaintiffs' Motion to Exempt the Claims of Lance Magee and Susan Magee From Limitations Imposed by I.C. § 6-1603 and to Submit the Issue of Recklessness to the Jury (Dkt. 37) is DENIED;

(iv)    Plaintiffs' Motion for Leave to Amend Complaint to Include Prayer for Punitive Damages (Dkt. 39) is DENIED;

(v)     Defendant's First Motion in Limine (Dkt. 54) is GRANTED, in part, and DENIED, in part;

(vi)    Plaintiffs' Second Motion in Limine (Dkt. 65) is GRANTED; and

(vii)   Defendant's Second Motion in Limine (Dkt. 70) is GRANTED.

DATED:  July 12, 2021

_____
Honorable Raymond E. Patricco
U. S. Magistrate Judge

---

comport with evidence at trial).  Whether such a motion is granted is subject to the Court's discretion and not decided here.  So, while earlier-filed pre-trial motions to amend to assert a claim for punitive damages are indeed permitted/encouraged (hence the deadline), they are not absolutely required on this record.  Additionally, the prudent course of action for Plaintiffs' counsel would have been to modify the Scheduling Order under Rules 6(b)(1)(A, B) and/or 16(b)(4), as necessary.